*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re FISHER/LASH, Minors.

UNPUBLISHED
February 22, 2024

No. 366955
Ingham Circuit Court
Family Division
LC Nos. 22-000548-NA
22-000549-NA

In re LASH, Minors.

No. 366958
Ingham Circuit Court
Family Division
LC No. 22-000550-NA

Before: LETICA, P.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

Four children were removed from respondents' care after Children's Protective Services (CPS) was informed that the respondents' only shared biological child tested positive for methamphetamine at birth. The trial court subsequently terminated each respondents' parental rights to their respective children because neither respondent was able to provide a stable home for the children. We affirm.

Respondents were living with the four children when CPS learned that the youngest child had tested positive for methamphetamine at birth. Upon further investigation, CPS reported that two of the children had never been enrolled in school and had never received dental care. This required the extraction of one child's front teeth. Additionally, CPS witnessed respondents' home in a deplorable condition, and it noted that trash, clothing, and toys were strewn throughout the home. Further, the home smelled of urine because two of the children frequently urinated on the floor instead of using the toilet.

Petitioner offered each respondent a parenting-treatment plan that included drug screens, substance-abuse counseling, parenting classes, and psychological evaluations coinciding with

therapy. Respondents participation with these services, however, was inconsistent. Both respondents missed several drug screens, and each tested positive for methamphetamines when they did submit to drug testing. Further, neither respondent completed a psychological evaluation or participated in therapy, and they missed more than half of their scheduled parenting-time sessions with the children.

During a two-day termination hearing, one respondent testified that he had been sober for approximately 30 days, which partially coincided with his incarceration. Nevertheless, the trial court found that the conditions that led to the adjudication continued to exist because respondents continued to use methamphetamine which prevented them from making progress in their parenting-treatment plans. Further, neither respondent was able to provide a stable home for the children and the children would likely be harmed if returned to respondents' care.

The trial court also addressed whether termination of respondents' parental rights would be in the best interest of the children because respondents' bonds with the children had dissipated after they failed to attend the majority of their scheduled parenting-time visits. It was reported that one child was extremely let down each time respondents failed to show up, and the other three children did not have a bond with respondents at all.

The trial court stated that it had considered guardianship, but found that termination of respondents' parental rights was in the children's best interests because the children needed stability and permanence that respondents demonstrated they were unable to provide. Further, the trial court found guardianship less desirable than termination of respondents' parental rights because the former would give respondents continued standing to petition for custody and create a more "drawn out process" that was inconsistent with the stability that the children needed. It had also been reported that the children were doing well in their preadoptive relative placements because it was the most family-like setting that the children had experienced.

Respondents now both appeal, and their appeals were consolidated by this Court. *In re Fisher/Lash Minors*, unpublished order of the Court of Appeals, issued July 31, 2023 (Docket No. 366955 and 366958).

Respondents both argue that termination of their parental rights was not in the best interests of the children. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). With respect to the children's best interests, this Court places its focus on the children rather than the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the

court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (cleaned up). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

In this case, the trial court found that the children did not have a bond with either respondent. This was exacerbated by neither respondent attending a majority of their parenting-time visits. Respondents were also inconsistent in other facets of their participation with their parenting-treatment plans by often missing drug screens or testing positive for methamphetamine, not completing psychological evaluations, and not attempting to rectify their barriers to reunification through consistent treatment. Respondents' inconsistency demonstrated that termination of their parental rights was in the best interests of the children. *Id*.

Further, the children's well-being while in the care of their respective placements, as contrasted to their well-being while in the care of respondents, demonstrated that termination and adoption were in their best interests because the stability, permanency, and attentiveness to their health was improved in their relative placements.

Respondents argue that the trial court erred by not granting a guardianship. "[F]or a court to consider a guardianship before termination, one of two conditions must be met: either the DHHS must demonstrate 'under [MCL 712A.19a(8)] that initiating the termination of parental rights to the child is clearly not in the child's best interests' or the court must 'not order the agency to initiate termination' proceedings under MCL 712A.19a(8)." *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019), quoting MCL 712A.19a(9). "Even then, a trial court can order a guardianship only if it 'determines that [doing so] is in the child's best interests.' " *In re Rippy*, 330 Mich App at 360, quoting MCL 712A.19a(9)(c).

Neither of these conditions were met in this case. Petitioner maintained that the termination of respondents' parental rights was in the children's best interests, and the trial court explicitly found that guardianship was a less desirable option because respondents would retain standing to petition for custody, creating "more of a drawn out process," which was inconsistent with the children's need for stability.

One respondent argues that guardianship was appropriate because he had resolved his substance-abuse issues with methamphetamine. There was no evidence presented to substantiate this argument, however, except respondent's own assertion that he had maintained sobriety for approximately 30 days. Contrary to respondent's assertion, he did not consistently attend his drug screens and did not consistently participate in drug-treatment therapy.

Thus, we are not left with a definite and firm conviction that the trial court made a mistake

when it found that the termination of respondents' parental rights was in the best interests of the children.

Affirmed.

/s/ Anica Letica
/s/ Mark J. Cavanagh
/s/ Brock A. Swartzle